# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BARRY J. NEAL**                                              **CIVIL ACTION**

**VERSUS**                                                     **NO. 20-172-BAJ-RLB**

**AVONDALE INDUSTRIES,**
**INC., ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 25, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

BARRY J. NEAL                                                    CIVIL ACTION

VERSUS                                                           NO. 20-172-BAJ-RLB

AVONDALE INDUSTRIES,
INC., ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Plaintiff's Motion to Remand. (R. Doc. 13). The motion is opposed

by the Avondale Defendants and Hopeman Brothers, Inc. ("Hopeman"). (R. Doc. 31; *see* R.

Docs. 28, 29). Plaintiff filed a Reply. (R. Doc. 40). The Avondale Defendants filed a Sur-Reply.

(R. Doc. 41). Hopeman filed a Sur-Reply. (R. Doc. 48). The Avondale Defendants and

Hopeman submitted Notices of Additional Authority. (R. Docs. 53, 54).

**I.     Background**

On or about May 9, 2019, Barry J. Neal ("Plaintiff") brought this action in the 19th

Judicial District Court, East Baton Rouge Parish, Louisiana, alleging that he contracted lung

cancer, in part, as a result of direct exposure to asbestos while employed by Avondale Shipyards,

Inc. from 1969 to 1972. (R. Doc. 1-2, "Petition"). In relevant part, Plaintiff alleges negligence

claims against Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc.,

f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale

Shipyards, Inc.) ("Avondale") and Lamorak Insurance Company ("Lamorak")[1] (hereafter "the

Avondale Defendants"). (Petition ¶¶ 2, 14, 34-41).

On September 18, 2019, Plaintiff testified at his deposition that he worked at Avondale as

a welder helper and a tacker welder on new construction of Lykes cargo ships and was exposed

_____

[1] Lamorak was sued as the alleged insurer of various alleged executive officers of Avondale. (Petition ¶ 2).

to asbestos dust while working in close proximity to other workers installing pipe installation and to Hopeman employees installing wallboard for vessels. (R. Doc. 1-3).

On March 23, 2020, the Avondale Defendants removed this action, asserting that the Court has subject matter jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442(a). (R. Doc. 1).  In support of removal, the Avondale Defendants state that on February 24, 2020, the Fifth Circuit decision *Latiolais v. Huntington Ingalls, Inc*., 951 F.3d 286 (5th Cir. Feb. 24, 2020) overruled various decisions requiring a "causal nexus" test and held that negligence claims under Section 1442(a) are now removable. (R. Doc. 1 at 4).  The Avondale Defendants assert that the Notice of Removal was timely filed under 28 U.S.C. § 1446(b)(3) because removal was within 30 days of the receipt of the *Latiolais* decision, which was the first "other paper" received by the Avondale Defendants making Plaintiff's negligence suit removable to federal court. (R. Doc. 1 at 4).  The Avondale Defendants also cite *Green v. R.J. Reynolds Tobacco Co*., 274 F.3d 263, 266-68 (5th Cir. 2001) in support of the timeliness of removal. (R. Doc. 1 at 4).  The Avondale Defendants also assert that they satisfy all requirements for removal under Section 1442(a), including asserting three colorable federal defenses: that plaintiffs' claims are pre-empted and barred by the Longshore Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq*.; that plaintiffs' claims are barred by government contractor immunity as established by *Boyle v. United Technologies Corp*, 487 U.S. 500 (1988); and that plaintiffs' claims against are barred by the derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). (R. Doc. 1 at 5-10).

On April 21, 2020, Plaintiff filed the instant Motion to Remand, arguing that the removal was untimely under 28 U.S.C. § 1446(b)(3) and that removal was improper under 28 U.S.C. § 1442(a). (R. Doc. 13).

## II.    Arguments of the Parties

In support of remand, Plaintiff first argues that the removal was untimely because it was not within thirty days of the Avondale Defendants' receipt of Plaintiff's September 18, 2019 deposition transcript, which Plaintiff characterizes as an "other paper" from which the Avondale Defendants could ascertain that the action was removable because the testimony provided that Plaintiff was exposed to asbestos in connection with work on vessels allegedly built at the direction of the federal government. (R. Doc. 13-1 at 6-7). Plaintiff further argues that the involuntary-voluntary rule was violated because the basis of removal was not a voluntary amendment by the plaintiff. (R. Doc. 13-1 at 7-8). Plaintiff further argues that the *Latiolais* decision does not constitute an "other paper" under 28 U.S.C. § 1446(b)(3) as asserted in the Notice of Removal, and the *Green* decision, which affirmed the re-removal of an action following an intervening order addressing a pertinent legal issue in a different action, is inapplicable or distinguishable. (R. Doc. 13-1 at 8-11). Plaintiff further argues that the federal officer removal statute is inapplicable to provide subject matter jurisdiction because the Avondale Defendants are incapable of demonstrating a colorable federal defense to Plaintiff's state law negligence claims and there is no independent subject matter jurisdiction under the LHWCA. (R. Doc. 13-1 at 11-33). Finally, Plaintiff argues that his disclaimer in Paragraph 14 of the Petition effectively disclaims federal officer jurisdiction. (R. Doc. 13-1 at 33).

In opposition, the Avondale Defendants argue that the *Latiolais* decision changed the law to provide that removal is allowed under the federal officer removal statute where the plaintiff only asserts negligence claims. (R. Doc. 31 at 17-20). The Avondale defendants argue that Plaintiff's deposition did not start the removal clock and the "voluntary-involuntary" rule does not apply. (R. Doc. 31 at 20). The Avondale Defendants further argue that the *Latiolais* decision

was an "order or other paper" under Section 1446(b)(3), and removal was otherwise proper even if the *Latiolais* decision was not an "order or other paper" under Section 1446(b)(3). (R. Doc. 31 at 20-26). The Avondale Defendants further argue that all substantive elements of the federal officer removal statute are satisfied, including the requirement of a colorable federal defense. (R. Doc. 31 at 27-54). Finally, the Avondale Defendants argue that Plaintiff's disclaimer of jurisdiction is ineffective. (R. Doc. 31 at 55-58). In its joinder to the Avondale Defendants' opposition, Hopewell argues that that it is also entitled to a federal forum under the federal officer removal statute for the same reasons asserted by Avondale. (R. Doc. 28).

In reply, Plaintiff reiterates that the Avondale Defendants' removal was untimely and that the Avondale Defendants and Hopeman have failed to raise a colorable federal defense. (R. Doc. 40).

In sur-reply, the Avondale Defendants address Plaintiff's argument that they have not presented any "on point" authority supporting their timeliness position. (R. Doc. 41). In contrast, Hopeman argues that it has asserted colorable federal defenses in support of federal officer removal. (R. Doc. 48). The Avondale Defendants and Hopewell also submitted lists of various decisions from the Eastern District of Louisiana denying motions to remand under similar circumstances. (R. Docs. 53, 54).

## III.  Law and Analysis

### A.  The Federal Officer Removal Statute

The federal officer removal statute provides for the removal of a civil action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . . ." 28 U.S.C. § 1442(a)(1). The purpose of this removal statute

is to protect the lawful activities of the federal government from undue state interference. *See Mesa v. California*, 489 U.S. 121, 126 (1989).  Section 1442(a) serves to overcome the "well-pleaded complaint" rule that would otherwise preclude removal even if a federal defense is asserted. *See id*. at 136.  Unlike the general removal provision, which is strictly construed in favor of remand, the federal officer removal statute is liberally construed in favor of removal. *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142, 147-48 (2007); *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).

To remove an action under Section 1442(a), a defendant must show: "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).[2]  The Court has reviewed the Avondale Defendants' arguments in support of a finding that removal was proper under the federal officer removal statute. (R. Doc. 31 at 27-54).  Given that the right to removal under the federal officer removal statute is liberally construed, the Court finds no basis for remanding the action for failing to meet the requirements under 28 U.S.C. § 1442(a)(1).

### 1.     Whether the Avondale Defendants have asserted a colorable federal defense

Plaintiff argues that removal was improper under the federal officer removal statute because the Avondale Defendants have not asserted a colorable federal defense.  In the Notice of Removal, the Avondale Defendants raised three federal defenses: that plaintiffs' claims are pre-empted and barred by the Longshore Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et*

---

[2] As discussed further below, prior to *Latiolais*, a defendant seeking to remove a civil action under § 1442(a)(1) was required to establish a "causal nexus" exists between the defendant's actions under color of federal office and the plaintiff's claims. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397-01 (5th Cir. 1998).

*seq.*; that plaintiffs' claims are barred by government contractor immunity as established by *Boyle v. United Technologies Corp*, 487 U.S. 500 (1988); and that plaintiffs' claims against are barred by the derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). (R. Doc. 1 at 8-9). "[A]n asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Latiolais*, 951 F.3d at 297 (quoting *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017), *overruled by Latiolais*, 951 F.3d 286 (5th Cir. 2020)). Plaintiff disputes that the Avondale Defendants have met the "colorable federal defense" prong in support of federal officer removal.

Under the government contractor defense, "liability cannot be imposed upon government contractors for design defects in military equipment when '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 207 n. 5 (5th Cir. 2010) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). Plaintiff argues that the Avondale Defendants are unable to show compliance with government specifications or directives in this case. (R. Doc. 13-1 at 13-23). Having considered the arguments of the parties, the Court finds that the government contractor defense constitutes a colorable defense in this action for the purposes of the federal officer removal statute.

First, the Avondale Defendants must show that the federal government "approved reasonably precise specifications" regarding the contractor's work. *Boyle*, 487 U.S. at 512. "This assures that 'the government, and not the contractor, is exercising discretion in selecting the

design.'" *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001) (quoting *Stout v. Borg–Warner Corp.*, 933 F.2d 331, 334 (5th Cir. 1991)).

The Avondale Defendants have submitted evidence in support of a showing that the Lykes ships at issue were built under contracts executed between Avondale and the federal government, and that the contracts established the mandatory terms, conditions and specifications imposed upon Avondale by the government in the construction of those vessels, including the requirement that Avondale use asbestos.  The Avondale Defendants submit an affidavit of Christopher P. Herfel, who has a degree in Marine Engineering from the U.S. Merchant Marine Academia and a Third Assistant Engineer's License from the U.S. Coast Guard, and served as an Officer in the United States Naval Reserve. (*See* R. Doc. 31-3) (May 6, 2020 Affidavit of Christopher P. Herfel, "Herfel Aff." ¶¶ 2-4).  He currently serves as the President/CEO of a firm that specializes in the research and analysis of federal naval and merchant marine documents and records. (Herfel Aff. ¶ 5).  Prior to this role, he worked at a shipyard managing the construction planning, engineering, and repair of vessels. (Herfel Aff. ¶ 6).[3]

Based on his review of the documents, Mr. Herfel states that Plaintiff worked at Avondale from February 5, 1965 until May 26, 1965 as a Welder Helper and Tacker Helper and testified that he worked on board cargo ships undergoing construction for Lykes Lines and the United States Maritime Administration ("MARAD"). (Herfel Aff. ¶ 14).  These Lykes ships were constructed pursuant to contracts between Avondale, Lykes, and MARAD. (Herfel Aff. ¶¶

---

[3] In support of a finding that they have submitted evidence showing that the ships at issue were built under contracts executed between Avondale and the federal government, the Avondale Defendants also rely upon the deposition testimony of Felix Albert. (R. Doc. 31-7) (August 13, 1996, Deposition of Felix Albert, taken in *Anderson, et al. v. Asbestos Corp. Ltd., et al.*, Civ. A. No. 96-2395 c/w *Gauthe, et al. v. Asbestos Corp. Ltd., et al.*, Civ. A. No. 96-2454 (E.D. La.), at pp. 24-25).

14-15). Avondale built ships for MARAD under The Merchant Marine Act of 1936, 46 U.S.C. §§ 1101-1294. (Herfel Aff. ¶ 15). That Act authorized MARAD to provide federal subsidies to enable vessels built and staffed in the United States to compete effectively in foreign trade with foreign vessels. *See OSG Bulk Ships, Inc. v. United States*, 921 F. Supp. 812, 815 (D.D.C. 1996). Title V of the Act, known as the Construction Differential Subsidy ("CDS") Program, encouraged domestic construction of United States ships to be used exclusively in foreign trade to compete with foreign ships built at lower costs in foreign shipyards. *Id*. The CDS Program allowed MARAD to use federal funding to pay over half the cost of new merchant ships to defray the cost to ship owners of building ships in United States shipyards. *Id*. (*See* Herfel Aff. ¶ 15). The ships' plans and specifications to be constructed within the CDS Program were reviewed by both MARAD and the U.S. Navy, which required all ships to include specific "National Defense Features" intended to ensure that the ships could be used as Naval Auxiliaries in time of war. (*See* Herfel Aff. ¶ 17). *See American Maritime Add'n v. Stans*, 329 F. Supp. 1179, 1186 (D.D.C. 1971) ("[I]t is clear from Section 501(a) of the Act that a major purpose of the [CDS] program is to ensure the availability of American merchant vessels 'for use by the United States for national defense or military purposes in time of war or national emergency.'") (quoting 46 U.S.C. § 1151(a)).

The construction contracts for ships built within the CDS Program required Avondale to build the ships in strict accordance with the approved plans and specifications and to obtain approval from MARAD to make any changes. (Herfel Aff. ¶ 18). Under the contracts, Avondale was subject to inspection by MARAD representatives at all times to ensure compliance. (Herfel Aff. ¶ 18). The specifications, which were approved by MARAD and incorporated into the contracts, all required the use of some asbestos materials. (Herfel Aff. ¶ 18-19, 26-27).

The foregoing evidence is sufficient to sustain the Avondale Defendants' burden of establishing a colorable showing that the first *Boyle* factor is met. *See Latiolais*, 951 F.3d 286, 297 (5th Cir. 2020) ("Avondale submitted one affidavit and deposition testimony alleging that the Navy required installation of asbestos on the *Tappahannock*, as well as another affidavit alleging that the Navy generally required Avondale to install asbestos and to comply with certain related safety practices. These documents make colorable that the government approved reasonably precise specifications about the installation of asbestos.").

Second, the Avondale Defendants must demonstrate that Avondale's work conformed with the government's specifications and regulations.  The Avondale Defendants first argue that this factor is satisfied by Plaintiff's own claim that Avondale used asbestos in the construction of the Lykes ships. *Latiolais*, 951 F.3d at 297-98 ("Latiolais does not challenge that Avondale complied with those specifications, if they existed. Indeed, Latiolais himself testified that Avondale used asbestos in refurbishing the *Tappahannock*.").  Plaintiff nevertheless argues that Avondale failed to comply with government specifications because "the testimony of those individuals with actual knowledge of the conditions at Avondale, including Mr. Neal, leaves no doubt that Defendants failed to comply with these federal requirements as to the protection of employees from asbestos exposures." (R. Doc. 13-1 at 15).  Plaintiff argues Avondale cannot rely on *Boyle* because it failed to comply with the safety requirements of the Walsh-Healey Act and other safety mandates in its use of asbestos-containing products. (R. Doc. 13-1 at 17-18).

The Avondale Defendants, however, present evidence that Avondale did in fact comply with those requirements, including an affidavit of Danny Joyce, an industrial hygienist who spent years investigating the historic use of asbestos work practices at Avondale. (*See* R. Doc. 31-9) (Apr. 17, 2018, Affidavit of Danny Joyce, "Joyce Aff.").  Mr. Joyce conducted a detailed review

of the historical safety regulations governing Avondale's shipbuilding activities that were in effect from World War II to the present and found that "Avondale . . . complied with governmental and industry rules and regulations relative to asbestos air quality." (Joyce Aff. ¶¶ 3, 6). Furthermore, Mr. Joyce has provided testimony at trial that Avondale was in compliance with the Threshold Limit Value ("TLV") for asbestos exposure that was in effect under Walsh-Healy in the 1960s. (*See* R. Doc. 31-10) (Feb. 13, 1996, Trial Testimony of Danny Joyce). In addition, the affidavit of Edward Blanchard, an Avondale superintendent and vice president who worked at Avondale from 1942 to 1988, discusses the government oversight of Avondale's shipbuilding operations, including safety, stating that "[d]uring the construction of steam-powered commercial cargo vessels in the 1960's and l970's, the same regular and detailed inspections of the work on those vessels were conducted by inspectors working under the authority of the U.S. Coast Guard and the Maritime Commission. For example, for Lykes Lines vessels constructed at Avondale, he recalls that there were ten inspectors monitoring the construction." (R. Doc. 31-12) (June 30, 2005, Affidavit of Edward Blanchard, ¶ 25). In addition, former Avondale employee Peter Territo testified that federal representatives supervised every aspect of the shipbuilding process at Avondale, and Walsh-Healy safety inspectors regularly conducted safety inspections of the shipyard. (R. Doc. 31-13) (July 30, 2004, Deposition Testimony of Peter Territo).

Given the foregoing, as well as other evidence submitted by the Avondale Defendants, the Court finds that the Avondale Defendants have established a colorable argument that Avondale's work conformed with the government's specifications and regulations. The Court does not assess the merits of the Avondale Defendants' defense at this stage and instead must merely determine whether the defense is colorable. Accordingly, any genuine dispute of

material fact with respect to the second *Boyle* factor is not appropriately decided at this stage of the litigation. *Laurent v. City of New Orleans*, No. 14-2022, 2014 WL 5410654, at *4 (E.D. La. Oct. 23, 2014) ("[A] motion to remand is not the proper mechanism by which to litigate a defendant's defense.").

Finally, The Avondale Defendants must show that Avondale warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Boyle*, 487 U.S. at 512. The Avondale Defendants submit that the testimony they have offered by Mr. Herfel, Mr. Joyce, and Mr. Richard Lemen is sufficient to establish a colorable showing of this factor because the federal government knew more than Avondale about the hazards of asbestos exposure. *See Latiolais*, 951 F.3d at 298 ("Avondale's evidence tends to support that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures. From such evidence, it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know.").

The Avondale Defendants have submitted evidence in support of a finding that the federal government knew more than Avondale about asbestos-related hazards and related safety measures. Mr. Herfel states that the federal government new as much, if not more, than Avondale did about the hazards of asbestos exposure, and that by the early 1940s the government had become an authoritative leader in the field of occupational medicine and industrial hygiene relating to the hazards of exposure to asbestos. (Herfel Aff. ¶¶ 29-32). Mr. Joyce states that "Avondale did not have any information regarding the hazards of asbestos that was not known by the Federal Government. . . ." (*See* R. Doc. 31-4) (May 15, 2019, Affidavit of Danny Joyce, ¶ 9). Finally, Mr. Lemen, an Assistant Surgeon General of the United States (ret.) and Rear Admiral, USPHS (ret.), testified that while employed by the National Institute for Occupational

Safety and Health ("NIOSH") beginning in the early 1970s, he was involved in the review of then-existing scientific and medical literature on asbestos hazards conducted for NIOSH that provides recommendations to OSHA regarding safe levels of asbestos exposure. (R. Doc. 31-19) (Jan. 10, 2014, Deposition of Richard Lemen).  The Court finds this evidence to be sufficient to make a colorable showing that the government was aware of asbestos hazards associated with the Avondale Defendants during the relevant time period. *See Jackson*, 2020 WL 3510724, at *11.

Based on the foregoing, the Avondale Defendants' government contractor defense is a colorable federal defense for the purposes of the federal officer removal statute.  To be clear, the Court is not reaching any conclusion at this point in the litigation as to whether the Avondale Defendants will ultimately succeed on a colorable defense for the purposes of the federal officer removal statute.  A federal contractor defense is colorful under the federal officer removal statute when the removing party's entitlement to it is subject to reasonable debate. *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016).  Accordingly, the Avondale Defendants have presented at least one colorable federal defense and the Court need not consider whether any of its other asserted federal defenses are also colorable.

   **2. Whether the Avondale Defendants are "persons" within the meaning of the statute**

There is no dispute that the Avondale Defendants are "persons" within the meaning of Section 1442(a). *See Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (corporations are "persons" for removal pursuant to Section 1442).

   **3. Whether the Avondale Defendants acted pursuant to a federal officer's directions**

The Avondale Defendants assert that Avondale was constructing Lykes ships "pursuant to contracts with the U.S. Maritime Administration because the United States government, acting

through the U.S. Maritime Administration, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform—to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests." (R. Doc. 1 at 6). The Supreme Court has made it clear that the words "acting under" are broad and are to be liberally construed, though their interpretation must be limited by the statute's "language, context, history, and purposes." *Watson*, 551 U.S. at 147. "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Id*. at 153. A private entity is acting under the direction of a federal officer where it "fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war" and arguably "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Id*. at 153-54 (citing *Winters*, 149 F.3d 387).

For the reasons discussed above in support of the first prong of the *Boyle* test, the Court concludes that the Avondale Defendants have demonstrated they acted pursuant to a federal officer's direction. Here, Plaintiff's claims against the Avondale Defendants involved the installation of asbestos-containing wallboard and pipefittings on Lykes ships built pursuant to contracts with MARAD. The Avondale Defendants argue they are being sued for acts performed at the direction of the federal government—namely MARAD. As discussed above, Mr. Herfel provides that these Lykes ships were built for MARAD under the CDS Program of the Merchant Marine Act of 1936, which required all ships receiving subsidies to include specific "National Defense Features" intended to ensure that the ships could be used as Naval Auxiliaries in time of war. (Herfel Aff. ¶ 15, 17). The specifications, which were approved by MARAD and incorporated into the contracts, all required the use of some asbestos materials. (Herfel Aff. ¶ 18-

19, 26-27). Based on Mr. Herfel's affidavit, it is apparent that the Lykes ships on which Plaintiff worked were subsidized by the federal government and were required to be built according to certain specifications, so that they could be used in a time of war. *Dempster*, 435 F. Supp. 3d at 725. Given that the evidence presented establishes that had the Lykes ships that Plaintiff worked on not been built, the government would have had to build similar vessels to be used as Navy Auxiliaries during war, the Court finds that the facts in the record are sufficient to establish that Avondale was "acting under" federal direction. *See Wilde v. Huntington Ingalls, Inc.,* 616 F. App'x 710, 713 (5th Cir. 2015); *Dempster*, 435 F. Supp. 3d at 725-26; *Jackson*, 2020 WL 3510724, at *12-13.

### 4.     Whether the charged conduct is connected or associated with an act pursuant to a federal officer's directions

The Avondale Defendants further submit that Plaintiff's claims relate to Avondale's actions under color of federal office because the alleged negligence is connected to Avondale's construction of Lykes ships." (R. Doc. 29 at 34).

In *Latiolais*, the Fifth Circuit interpreted the Removal Clarification Act of 2011, which amended Section 1442(a) to reflect that a removable claim is one "relating to any act under color of" federal office, as "broaden[ing] federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office." *Latiolais*, 951 F.3d at 292. As the *Latiolais* court broadly pronounced, "Subject to the other requirements of section 1442(a), any civil action that is connected or associated with an act under color of federal office may be removed." *Id.* at 296. In *Latiolais*, for example, the court reasoned that this requirement was satisfied because the defendant allegedly failed to warn the plaintiff of, or protect the plaintiff from, the dangers of asbestos—negligent acts that were "connected with

the installation of asbestos during the refurbishment" of a vessel allegedly performed "pursuant to directions of the U.S. Navy." *Id.* at 296.

The "connection" condition of removal is satisfied in this action.  Plaintiff claims the Avondale Defendants failed to warn him about the dangers of asbestos and failed to take certain precautions to prevent his exposure to asbestos.   Plaintiff's claims relate to the Avondale Defendants' actions under color of federal office, specifically, their construction of Lykes ships to the required federal specifications.  Accordingly, Plaintiff's challenged conduct is connected with the acts under federal office, thus satisfying this final requirement for removal.  The Court therefore has jurisdiction over this matter pursuant to the federal officer removal statute. *Jackson*, 2020 WL 3510724, at *13.

Having concluded that the Avondale Defendants properly removed this action under the federal officer removal statute, the Court need not determine whether Hopeman has an independent basis for removal.

## B.    Timeliness of Removal

The Avondale Defendants' removal of the action was timely under 28 U.S.C. § 1446(b)(3).  Generally, a defendant must file the notice of removal within 30 days of receiving "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. §1446(b)(1).  However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §1446(b)(3).  The 30-day period under Section 1446(b)(3) is triggered only where jurisdiction is "unequivocally clear and certain" from the document. *See Bosky v.*

*Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (stating that the statutory term "ascertained" means "unequivocally clear and certain").

As discussed above, the federal officer removal statute authorizes removal of an action by any person acting under a United States agency or officer "for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). Prior to *Latiolais*, the Fifth Circuit held that the foregoing "under color of office" requirement was satisfied only where the removing defendant demonstrated that it "acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' action under color of federal office and the plaintiff's claims." *Latiolais*, 951 F.3d at 291 (quoting *Winters*, 149 F.3d at 398) (internal quotation marks omitted). Given the foregoing "causal nexus" test, asbestos-related cases that involved only negligence claims could not be removed under the federal officer removal statute. *See IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d 232 (5th Cir. 2019); *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398 (5th Cir. 2018); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016); *Bartel v. Alcoa Steamship Co.*, 805 F.3d 169 (5th Cir. 2015).

In *Latiolais*, the Fifth Circuit, *en banc*, overruled the foregoing decisions to the extent they relied on a "causal nexus" test after Congress amended Section 1442(a) in 2011 to permit the removable of a case "for or relating to" acts under color of federal office. *Latiolais*, 951 F.3d at 296; *see Schexnayder v. Huntington Ingalls Inc.*, No. 20-775, 2020 WL 3970159, at *1 (E.D. La. July 14, 2020) (*Latiolais* overturned the Fifth Circuit's prior "causal nexus" jurisprudence and adopted a broader "relating to" test). Given the foregoing, the Fifth Circuit held in *Latiolais* that the plaintiff's allegations that Avondale was negligent in failing to warn him of the dangers of asbestos and failing to take measures to prevent exposure with respect to the installation of

asbestos during the refurbishment of a U.S. Navy vessel was related to an act under color of federal office and, accordingly, satisfied the requirements of Section 1442(a). *Latiolais*, 951 F.3d at 296.

This action, which asserts only negligence allegations against the Avondale Defendants, was not removable under the now overruled "causal nexus" jurisprudence controlling in the Fifth Circuit prior to the *Latiolais* decision. Given that the action was not removable based on the initial pleading, the issue becomes whether the *Latiolais* decision constitutes an "order or other paper from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3). If so, then the Avondale Defendants had 30 days from its receipt of the *Latiolais* decision to remove the action.

Generally, a decision in an unrelated cases may not constitute an "order or other paper" under Section 1446(b)(3). The Fifth Circuit has held, however, that a decision in an unrelated case may constitute an "order" upon which removal can be based where the same party was a defendant in both cases, the cases involve similar factual circumstances, and the decision resolved a legal issue that has the effect of making the case removable. *Green v. R.J. Reynolds Tobacco Co.* 274 F.3d 263, 268 (5th Cir. 2001). Here, the *Latiolais* decision falls within the *Green* exception: Avondale is a defendant in both cases; both cases involve negligence claims brought against Avondale by a former employee alleging he was exposed to asbestos while working for Avondale on vessels for the federal government; and the *Latiolais* decision resolved the legal question at issue – the removability of asbestos-related negligence claims under the federal officer removal statute.

Consistent with various other decisions in the Fifth Circuit, the Court concludes that in light of the *Green* exception, the *Latiolais* decision constitutes an "order" for the purposes of

allowing removal under Section 1446(b)(3). *See Schexnayder v. Huntington Ingalls Inc.*, No. 20-775, 2020 WL 3970159, at *2 (E.D. La. July 14, 2020); *Martin, et al. v. Air Products and Chemical Inc., et al.*, No. 20-168, ECF. 42 (M.D. La. June 22, 2020), *report and recommendation adopted*, ECF No. 51 (M.D. La. July 7, 2020); *Jackson v. Avondale Industries, Inc.*, 20-1005, 2020 WL 3510724 (E.D. La. June 29, 2020); *Holmes v. Bossier*, No. 20-880, 2020 WL 3482121, at *4 (E.D. La. June 26, 2020); *Hulin v. Huntington Ingalls, Inc.*, No. 20-924, 2020 WL 3072187, at *2 (E.D. La. June 10, 2020); *Francis v. ITG Brands LLC, et al.*, No. 20-997, 2020 WL 2832538, at *3 (E.D. La. June 1, 2020); *Broussard v. Huntington Ingalls, Inc.*, No. 20-836, 2020 WL 2744583, at *3 (E.D. La. May 27, 2020); *Bourgeois v. Huntington Ingalls Inc.*, No. 20-1002, 2020 WL 2488026, at *4 (E.D. La. May 14, 2020).

In so concluding, the Court rejects Plaintiff's arguments that *Green* is inapplicable to the instant removal. Plaintiff first argues that removal was untimely because the Avondale Defendants did not remove within 30 days of their receipt of Plaintiff's deposition transcript on February 6, 2020. The problem with this argument is that the *Latiolais* decision – which overruled previous Firth Circuit decisions requiring the "causal nexus" test – was issued on February 24, 2020. Accordingly, the action was not removable under prevailing Fifth Circuit jurisprudence when the Avondale Defendants received a copy of Plaintiff's deposition transcript. In other words, receipt of Plaintiff's deposition transcript did not trigger the 30-day period for removal because the action was not removable under the federal officer removal statute until the *Latiolais* decision. *See Holmes*, 2020 WL 3482121, at *3 (E.D. La. June 26, 2020) ("[A]t the time defendants received the transcripts—pre-*Latiolais*—it was unequivocally clear and certain that this case was *not* removable. Had defendants removed the case at that time, it surely would have been remanded.") (citation omitted).

As the Fifth Circuit itself observed, "the 'direct causal nexus' test became a talisman even after Congress, in 2011, amended section 1442(a), altering the requirement that a removable case be 'for' any act under color of federal office and permitting removability of a case 'for *or relating to*' such acts." *Latiolais*, 951 F.3d at 291 (5th Cir. 2020) (quoting 28 U.S.C. § 1442(a) (2012)) (emphasis added in *Latiolais*).  Thus courts continued to find that "the causal nexus element in [asbestos-exposure] cases is met when a plaintiff seeks to recover from a government contractor on a theory of strict liability but is absent when the theory of recovery is restricted to negligence." *Bourgeois*, 2020 WL 2488026, at *3 (quoting *Parfait v. Huntington Ingalls Inc.*, No.19-11958, 2019 WL 4297912, at *4 (E.D. La. Sept. 11, 2019)).  Indeed, the Fifth Circuit panel that first considered the *Latiolais* facts held that Avondale could not satisfy the causal nexus test. *Latiolais v. Huntington Ingalls, Inc.*, 918 F.3d 406, 410-11 (5th Cir.), *reh'g en banc granted*, 923 F.3d 427 (5th Cir. 2019), and *on reh'g en banc*, 951 F.3d 286 (5th Cir. 2020). And as recently of January of this year, the Eastern District of Louisiana remanded an asbestos exposure case against Avondale, finding it had not met the causal nexus test, even though by that point the original panel decision in *Latiolais* had expressed "its misgivings about the current state of the law" and the decision was under *en banc* review. *Schexnayder v. Huntington Ingalls Inc.*, No. 19-11773, 2020 WL 114136, at *2 (E.D. La. Jan. 10, 2020).  The *Latiolais* decision explicitly overruled those cases that continued to rely on the "causal nexus" test. *Latiolais*, 951 F.3d at 296.  There is no other possible interpretation but that *Latiolais* changed the law.

The plaintiff in this action asserts only negligence claims against the Avondale Defendants, making clear that "[n]o allegation in this petition shall be interpreted as pleading a claim of strict liability concerning" the Avondale Defendants. (Petition ¶ 24).  Accordingly, receipt of Plaintiff's deposition transcript obtained prior to the *Latiolais* decision, while alerting

the Avondale Defendants that Plaintiff worked on Lykes ships, did not trigger the 30-day removal period because the "causal nexus" test would preclude removal because there were no allegations of strict liability.  As the court in *Bourgeois* concluded under a nearly identical situation, "[h]ad Avondale removed the case at that time, it surely would have been remanded." 2020 WL 2488026, at *3.  This case was not removable prior to the *Latiolais* decision announcing a federal officer removal test that Avondale could meet. [4]

Plaintiff also argues that *Green* is distinguishable.  Plaintiff correctly points out that the defendants in *Green* had made a first, unsuccessful attempt to remove the case.  Plaintiff argues that unlike in *Green*, there was no prior judicial determination that this particular case was not removable.  However, Plaintiff fails to explain why a prior judicial determination of removability has any bearing on the exception recognized in *Green*.  Moreover, requiring Avondale to remove every case that was not removable under the causal nexus test in the hope that the case might later become removable would be a waste of judicial resources and would amount to the kind of protective removal that Section 1446 discourages. *See Bourgeois* 2020 WL 2488026, at *4; *see Morgan v. Huntington Ingalls, Inc*., 879 F.3d 602, 610 (5th Cir. 2018) (recognizing one of the goals of §1446 is to "reduce 'protective' removals by defendants" and "discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement") (quoting *Bosky*, 288 F.3d at 211).

Finally, the Court rejects Plaintiff's argument that removal is improper because the Avondale Defendants referenced the *Latiolais* decision as an "other paper" in the Notice of Removal. (*See* R. Doc. 1 at 5).  Notwithstanding this improper terminology, the Notice of Removal clearly invokes the *Latiolais* decision as the triggering document under §1446(b)(3)

---

[4] The fact that Avondale continued to attempt to remove some cases (like *Latiolais*) but not others does not change this analysis.

and thereby meets the notice pleading requirements of Rule 8. *See Francis*, 2020 WL 2832538, at *3 n.2.

The Court also rejects Plaintiff's argument that removal is improper under the "voluntary-involuntary rule, which provides "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff." *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 532 (5th Cir. 2006). Plaintiff presents no decisions finding this rule applicable in the context of a removal under the federal officer removal statute. Indeed, Section 1442(a) "permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response." *Latiolais*, 951 F.3d at 290. The Court finds no basis for extending the voluntary-involuntary rule to federal officer removals under Section 1442(a).

### C.    Plaintiff's Pre-Removal Disclaimer

Plaintiff argues that Paragraph 14 of his Petition is an effective disclaimer of any cause of action which could invoke federal officer jurisdiction. (R. Doc 13-1 at 33). The pre-removal disclaimer states the following:

> Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Petitioner also disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust following acts or omissions of a party committed at the direction of any officer or any person acting under that officer of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. Relative to the asbestos dust exposures from Avondale Shipyards, Petitioner alleges against Avondale and the Avondale Executive Officers **only** negligent failure to adopt adequate asbestos safety measures that would have prevented the injuries upon which this Petition is based.

(Petition ¶ 14). Plaintiff's emphatic statement that he is "only" bringing negligence claims against the Avondale Defendants is consistent with pre-*Latiolais* law precluding the removal under Section 1442(a) of negligence-only claims asserting asbestos exposure. Accordingly, the

purpose of this disclaimer appears to solely disclaim causes of action (such as strict liability) that would have allowed removal prior to the *Latiolais* decision.

"[T]he majority of federal courts have found that jurisdictional disclaimers in complaints . . . are ineffective to avoid federal officer removal jurisdiction." *Dougherty v. A O Smith Corp.,* No. CV 13-1972, 2014 WL 3542243, at *4 (D. Del. July 16, 2014), *report and recommendation adopted*, 2014 WL 4447293 (D. Del. Sept. 8, 2014). There are two related reasons these disclaimers are ineffective. *Id.* "First, the presumption under the general removal statute favors remand, due to the limited jurisdiction of federal courts, while the presumption under the federal officer removal statute favors removal, for the benefit of the federal officer involved the case." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011). Second, "federal officers may also remove a case based on the existence of a federal defense that is not apparent from the claim alleged" because the well-pleaded complaint rule does not apply to the federal officer removal statute. *Id.*

Here, the Court has found that removal under the federal officer removal statute is proper. Accordingly, "[t]he Court will not grant remand on the disclaimer alone." *Boyd v. Boeing Co.*, No. 15-0025, 2015 WL 4371928, at *6 (E.D. La. July 14, 2015); *see Hayden v. 3M Co.*, No.15-2275, 2015 WL 4730741, at *3 (E.D. La. Aug. 10, 2015). The disclaimer itself merely consists of allegations, it is not a binding stipulation that otherwise removal claims would not be brought if the action were remanded to state court, it is ambiguous with respect to the meeting of "federal enclave" in the context of this case, and it is ambiguous with respect to the specific claims the Plaintiff purports to disclaim. *See Legendre v. Anco Insulations, Inc.*, No. 12-94, 2012 WL 2064537, at *4 (M.D. La. May 14, 2012), *report and recommendation adopted*, 2012 WL 2064533 (M.D. La. June 7, 2012). The disclaimer specifically carves out allegations against the

Avondale Defendants for "negligent failure to adopt adequate asbestos safety measures that would have prevented the injuries upon which [the] Petition is based." (Petition ¶ 14). These are the very types of claims now removable in light of the *Latiolais* decision.

## IV.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion to Remand (R. Doc. 13) be **DENIED**.

Signed in Baton Rouge, Louisiana, on September 25, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**